(Decided 18th December, 1885.)

MARTIN HUSSEY *vs.* MARTIN RYAN.

*Negligence—Personal injury from Falling fence—Due care and caution—Consequences unavoidable by the exercise of Ordinary foresight and prudence—What is not Contributory negligence by the Injured party—Measure of Damages—Damages recoverable in Actions for Personal injuries—Pleading—Instructions.*

H. while in possession of certain peremises as tenant, found it necessary in connection with the prosecution of his business, to erect a long and high fençe on the front thereof, and parallel with Pratt

Hussey *vs.* Ryan.

street. Inside of the fence, and attached to it, H. built on one side of the gateway, a lime shed, and on the other side, a stable. On the 4th of February, 1884, H. surrendered possession of the premises to his landlord, and about the same time removed the stable. On the 20th of February, the infant daughter of R. was passing along Pratt street on her way to her work, and the fence fell upon her, and very seriously injured her. Shortly thereafter, H. entered upon the premises and removed the fence which was still standing, and took it into his own possession. In an action against H. by R. to recover damages for the injury thus done to his daughter, it was HELD:

1st. That if the defendant erected the fence in an insecure and unsafe manner, or permitted the same to be insecure, and unsafe to persons passing along said street, the plaintiff was entitled to recover, if his daughter was exercising due care and caution in passing along the street at the time of the injury.

2nd. That the fact that the defendant had surrendered the premises to his landlord and was not in possession thereof at the time of the accident, did not relieve him of liability to the plaintiff.

3rd. That if the fence was in itself sufficiently strong and secure to resist any ordinary wind storm, but was blown down by a storm of unusual force and velocity, the consequences of which the exercise of no ordinary care and prudence could prevent, the plaintiff was not entitled to recover.

4th. That the fact that the child stopped on the street while passing the fence, for the purpose of looking at some object on the opposite side of the street, and that the accident would not have occurred, if she had not thus stopped, would not relieve the defendant of responsibility.

5th. That in awarding compensation for the loss of his daughter's services, the jury might consider how far the injury was permanent in its nature, and might affect her ability to render services for the plaintiff to the period when she would arrive at the age of twenty-one years.

The damages recoverable in actions for personal injuries, are for all the legal and natural consequences resulting from the wrongful act, though the particular form or nature of the results was not contemplated or foreseen by the wrong-doer; and it is not necessary to state specially any matters which are the legal and natural consequences of the injury inflicted.

The Court may give instructions of its own, or explain the effect of those granted at the instance of the parties, provided they are not inconsistent therewith.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court. The jury rendered a verdict in favor of the plaintiff for $500, and judgment was entered accordingly. The defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, RITCHIE, and BRYAN, J.

*Arthur W. Machen,* for the appellant.

The Court instructed the jury that the plaintiff might recover, although the defendant was not in possession of the lot to which the fence belonged at the time of the occurrence of the accident on the 20th of February, and had not been possessed of it after the 4th of February, the date of his surrender. The doctrine of the instruction is that if a fence standing on premises occupied by a *tenant* for years is in such condition of disrepair at the termination of his tenancy that it *subsequently* falls down and injures a passer-by, he is responsible for the damage. This, it is submitted, is not law. The responsibility to third parties for the condition of land is either upon the *owner* or the *occupier.* The tenant, after his term has ceased, and he is out of possession, is neither. *Payne vs. Rogers,* 2 *H. Black.,* 350.

The cessation of responsibility upon parting with the property operates even where the erection is a nuisance *per se,* and was erected, not by a tenant, but by the owner of the fee. For one who has erected a nuisance on land in his tenure will be answerable for its continuance after he has parted with the possession, only when he continues to derive a benefit from the nuisance, as by

demising the premises and receiving rent, or where he conveys the property with covenants for the continuance of the nuisance. *Mayor of Albany vs. Cunliff*, 2 *Comstock*, 165, 174; *Blunt vs. Aikin*, 15 *Wend.*, 522; *Hanse vs. Cowing*, 1 *Lansing*, *N. Y.*, 288; *Walsh vs. Mead*, 15 *N. Y.*, (8 *Hun*,) 391; *Hedwig vs. Jordan*, 53 *Ind.*, 23, 24.

After the possession is parted with, the obligation to remedy the nuisance never rests upon the former occupant, in the absence of evidence that he has authorized the continuance of it. *Pretty vs. Bickmore*, *L. R.*, 8 *C. P.*, 401, 405. And even where property in such a condition as to be a nuisance is *demised* by the owner, he will not be liable for the consequences of the continuance of such state of things, if he has taken from his tenant a covenant to repair. *Leonard vs. Storer*, 115 *Mass.*, 86; *Gwinnell vs. Eamer*, *L. R.*, 10 *C. P.*, 658.

But the fence in question was a *lawful* erection in itself, and not of necessity a nuisance; it only became a nuisance, if ever, by being suffered to be out of repair. After the fourth of February, there was no duty of repair cast on the appellant. And the grievance complained of in the declaration was permitting the fence to be out of repair or "dilapidated," and to remain so. Until the 20th of February, the plaintiff had no cause of action. It was the state of things then existing, and doing him the special injury, which gave him all the right of action he possesses. It is believed that no precedent can be found for holding a stranger in interest responsible merely on the ground that at some former time he was temporarily an occupant of property, one of the fences of which has not been kept in repair.

The plaintiff's prayer, therefore,—at least as explained and defined in the subsequent instruction of the Court,—was objectionable on this ground. It was further objectionable because it did not submit the question whether the defendant was guilty of negligence. *Garland vs.*

*Town,* 55 *N. H.,* 55; *Lessee vs. Buchanan,* 51 *N. Y.,* 572; *Muller vs. St. John,* 57 *N. Y.,* 572, 3 *Hill,* 193.

The instruction as to the measure of damages was not justified by the declaration; and the objection was particularly taken in a special exception. The gist of the case is the *special injury* to the plaintiff, and his recovery is limited to the damage as laid. No harm having been inflicted on the person of the plaintiff, it was necessary for him to aver how he was damnified by the injury to the child. The declaration accordingly alleged that the plaintiff's child was wounded, &c., and became sick, and "so remained until the institution of this suit," and that the plaintiff thereby "was deprived of the services and assistance of his said infant daughter, and was forced to lay out and *expend* a large sum of money in and about her *care* and *nursing,* to wit, the sum of $100, and has *during all that time* been *deprived* of her *services and assistance.*" The plaintiff therefore should have been restricted to the damage alleged. *City of Chicago vs. O'Brennan,* 65 *Ill.,* 160, 164; *Ellicott vs. Lamborn,* 2 *Md.,* 131, 136; *McTavish vs. Carroll,* 13 *Md.,* 429.

*John I. Yellott,* for the appellee.

RITCHIE, J., delivered the opinion of the Court.

The plaintiff's cause of action, on which he recovered below, is thus set out in his amended *narr.*:

"For, that he the defendant heretofore, to wit, on the first day of February, 1884, at the City of Baltimore, was, and for a long time prior thereto, had been in possession of certain premises there situate, and while so in possession, wrongfully and unjustly caused to be put and erected in and upon a certain public street and highway there called West Pratt street, a high and long fence, to wit, about twelve feet high and fifteen feet long, and connected therewith a certain wooden shed or structure ; and wrong-

fully, negligently and unjustly allowed and permitted said fence, belonging and appurtenant to the premises aforesaid, so in possession of the defendant, and in and upon the said public street and highway, to wit, West Pratt street, to become dilapidated, unsafe and dangerous to persons rightfully passing on and along said public highway or street, and to remain in such dilapidated, unsafe and dangerous condition for a long space, to wit, from the said first day of February until the day of the institution of this suit; by means and in consequence of which said wrongful, negligent, unjust and improper conduct of the said defendant, the fence did on the 20th day of February, 1884, fall down upon, over and across the said public street or highway, to wit, West Pratt street; and Maggie Ryan, the infant daughter of the plaintiff then passing on and along said West Pratt street, on the way to the place of her employment, while in the exercise of reasonable caution and care on her part, was unavoidably crushed beneath the weight of the said falling fence and nuisance, and thereby cut, bruised, wounded and permanently injured; whereby she became sick, sore and disordered, and has so remained until the institution of this suit; whereby the plaintiff during all that time was deprived of the services and assistance of his said infant daughter, and was forced to lay out and expend a large sum of money in and about her care and nursing, to wit, the sum of one hundred dollars, and has during all that time been deprived of her services and assistance; and other wrongs and injuries were inflicted upon the plaintiff by the wrongful, unjust and negligent acts of the defendant hereinbefore alleged."

" And the plaintiff brings this his suit therefor, and claims one thousand dollars damages."

The proof clearly established the falling of the fence upon the child while near it on the street designated, on the 20th of February, 1884; that the fence was of the di-

mensions described, and appurtenant to the lot whose front it bounded, as it ran along and with said highway; that the defendant had occupied said lot as tenant, a vacant one when he went upon it, and had used it for the purposes of his business, and had erected the fence or part of it, and the shed or stable which stood against it, at least six or eight years prior to the time of the accident; that he had surrendered possession of the lot to his landlord on the 4th of said month of February, and removed the stable about the same date; and also, after the accident, removed the fence still standing, and took it into his own possession.

The points of contention in the case were the extent of the injury to the child; the character of the fence as to soundness, and the effect upon its stability of removing the stable; whether its fall was or not solely due to the violence of the wind; the legal liability of the defendant, in view of his surrender of the lot to his landlord prior to the day of the accident, and as to the measure of damages.

In the consideration of the prayers, on which the exceptions were based, we shall refer more in detail to the evidence to which they relate, and state our opinion of the law as applicable thereto.

The plaintiff's prayer simply rests his right to recover, on the finding by the jury, from the evidence that defendant was in the occupation and possession of the lot, situate on West Pratt street, a public thoroughfare of Baltimore City; that he erected the fence complained of in an insecure and unsafe manner, or permitted the same to be insecure and unsafe to persons passing along said street, and that the plaintiff's infant daughter, aged about thirteen years, was passing along said street, with due care and caution, and while so passing along said street, the fence, then being in an unsafe and insecure condition, fell upon and injured said infant daughter of plaintiff; unless the jury shall further find that said fence, if in a good and

safe condition at the time it fell, would have fallen from the violence of the wind testified to.

The Court granted this prayer, and also several instructions supplementary or explanatory thereof, the last one orally during defendant's final argument to the jury, but reduced to writing at defendant's instance; all which instructions, with the prayer itself, the defendant excepted to. The first of these added instructions is objectionable to appellant, because directing the jury, that, in awarding compensation for the loss of his daughter's services, they might consider how far the injury was permanent in its nature, and might affect her ability to render services for the plaintiff to the period when she would arrive at the age of twenty-one years. The second instruction states it to be unnecessary to find defendant was in possession of the lot at the time of the accident, or after the 4th of February. The oral instruction was in effect, but the reassertion of the second, with the accompanying statement, that the Court, when granting the plaintiff's prayer, intended thereby to instruct the jury substantially as they are now instructed by the explanation of said prayer.

So far as defendant's exception to this last instruction rests upon its being voluntary, or an explanation of the prayer to which it relates, it is well settled that the Court may give instructions of its own, or explain the effect of those granted at the instance of the parties, provided they are not inconsistent therewith. Such an interposition of the Court is often salutary and promotive of a clear understanding of the law of the case, especially if its rulings are not clearly understood, or, as sometimes occurs, are contravened or misconstrued in the argument to the jury. We think the Court clearly within its prerogative in this instance. *Higgins vs. Carlton*, 28 *Md.*, 115; 2 *Poe's Pl. & Prac.*, 292, and authorities there cited.

As to the substance of the plaintiff's prayer, and of the instructions supplemental thereto, we think the defend-

28                    v. 64.

ant's exceptions not well taken. So holding, in our opinion the defendant's first prayer, asking the instruction that there was no evidence in the case legally sufficient to warrant the jury in finding that the injuries sustained by the plaintiff's daughter were caused by any such wrongful act or acts, or by any such negligence on the part of the defendant, as would entitle the plaintiff to maintain his action, was properly refused.

The defendant's second prayer presents the proposition that, if the surrender of the lot to his landlord took place on the 4th of February, and the accident did not occur until the 20th of the same month, he was not liable. This prayer, we think, was also properly rejected.

We see nothing in a simple surrender of the lot, in connection with the other facts in the case, to relieve the defendant from the operation of the general principle, that the originator of a nuisance is liable for injuries occasioned thereby. There are cases in which it has been decided that by reason of the nature of the conveyance of the property on which a nuisance exists, an adoption of the nuisance, and an obligation to make repairs has been assumed by the grantee, to the relief of the originator; but the facts of this case bring it within no such exception. No particulars of the terms of the lease between the defendant and his landlord are furnished. And the surrender to the landlord appears to have been a mere relinquishment of the lot; the defendant acting as the owner of the fence and structures erected by him, and exercising, even after the day of the accident, the right to enter upon the premises and remove the fence as his own, part of which had caused the injury complained of. As the lot was a vacant one when he leased it, the presumption is, that he had the ownership of and the right to enter and to take away all structures erected by him during his tenancy, as he in fact did. *Wood on the Law of Nuisances,* secs. 114, 676.

The third prayer of the defendant was granted. This fully sets out the proposition that, if the fence was in itself sufficiently strong and secure to resist any ordinary windstorm, but was blown down by a storm of unusual force and velocity, the plaintiff could not recover. The issue as to the actual soundness of the fence was thus fairly and even liberally put for the defendant.

In defendant's fourth prayer he submits the instruction that if the child "stopped on the street while passing the fence for the purpose of looking at some object on the opposite side of the street, and that the accident would not have occurred if she had not stopped," the plaintiff could not recover. The mere stopping of the child had no effect upon the condition of the fence, and, as broadly stated, it was asking the Court to rule as matter of law, that it is contributory negligence to stop on a highway, and without reference to the length of time of the stop, if injury from a dilapidated structure then happens. The presumption to a traveller of a street is not that adjacent buildings are unsafe and liable to fall, and that reasonable care requires him to hurry on; he naturally supposes otherwise, and such a supposition is in accord with the public duty of proprietors of structures along such a highway to prevent their becoming unsafe to passers-by. There are many instances in which it is not incompatible with the lawful use of a street to halt while passing along. The conduct of the child in this case is one. She paused only for a minute or two, to gaze with childish curiosity at some workmen shingling a roof. There was certainly no error in rejecting this prayer.

In his fifth prayer the defendant seeks to limit the recovery of the plaintiff to the loss of service, and his expenditures between the day of the accident and the institution of the suit. This may be considered with defendant's special exception to the measure of damages granted plaintiff, on the ground that there was no sufficient evi-

dence to support the hypothesis of the instruction as to the permanent injury to the child, and because said instruction was contrary to law, and not warranted by the pleadings and the evidence.

There was evidence that the child was still sick at the time of trial, and had contracted epilepsy from the injury. This particular consequence was not specifically set out in the declaration; and the question arises whether for that reason it could not be considered by the jury, and whether the prospective loss of services from that cause could be estimated in the damages, and to what age of the child the father had a right to demand her services.

It is a well-settled principle that the damages recoverable in actions for personal injuries are for all the legal and natural consequences resulting from the wrongful act, though the particular form or nature of the results were not contemplated or foreseen by the wrong-doer; and that it is not necessary to state specially any matters which are the legal and natural consequences of the injury inflicted. This Court so held in *Sloan vs. Edwards*, 61 *Md.*, 99, where spasms had resulted from an assault and battery. Among other authorities of the same import are 2 *Greenleaf Ev.*, sec. 89; *Tyson vs. Booth*, 100 *Mass.*, 258; *Gaither vs. Blowers*, 11 *Md.*, 552.

That the prospective loss of service from the injury inflicted on the child, as well as that suffered up to the date of the suit, could properly be considered in the compensation awarded, was a proper instruction. In *Lamb vs. Walker*, 3 *Q. B. D.*, 389, the Court say: "It is a well-settled rule of law, that damages resulting from one and the same cause of action, must be assessed and recovered once for all." And *Sedgwick on the Measure of Damages*, in section 109, thus lays down the rule: "But, on the other hand, if the case be *tort*, and the wrong done before suit brought, then the plaintiff is not limited solely to the consequential damage which has actually occurred up to

the trial of the cause, but he may go on to claim relief for the prospective damage which can then be estimated as reasonably certain to occur. So in an action of *tort* for wounding the plaintiff's servant, the jury may give damages for the loss of service, not only before action brought, but afterwards, down to the time when, as appears in evidence, the disability may be expected to cease. And, therefore, fresh damage merely will not give a fresh action, and a judgment in a suit founded on a single act of *tort*, will be a conclusive bar to a second suit for the same injury, although harmful consequences may have made themselves apparent subsequent to the first suit; as it will be held that in the first verdict the plaintiff recovered all he was entitled to claim. But where there is a repetition or continuation of the trespass, then, of course, a fresh action will lie; in other words, as is sometimes said, injury and damage must concur."

As to the age up to which the plaintiff was entitled to the services of his daughter, the Court correctly placed it at twenty-one years. While for certain purposes, defined by statutory provisions, a female shall be deemed of age at eighteen, as a general rule her infancy continues till the former period, and in actions of this nature the general rule applies. *Mercer vs. Walmsley,* 5 *H. & J.*, 27; *Greenwood's Case,* 28 *Md.*, 369.

The Court was clearly right in its ruling as to this fifth prayer, and the special exception referred to was not well founded.

The defendant's sixth prayer was properly refused on two grounds, viz., that the instruction asked as to the effect of the wind had been already fully granted in his third prayer, and the guide for the determination by the jury of the soundness of the fence set up, was not their own conclusion from all the testimony, but finding "that prudent and sagacious persons considered it safe." Setting up this standard is also one of the vices of defendant's last and

seventh prayer. It also embraces the erroneous proposition that if, when the defendant surrendered the premises on the 4th of February, the fence was in a safe condition, and so regarded by prudent and sagacious persons, and its unsafe condition was not observed until the evening of the day before the accident, then the plaintiff could not recover, unless the jury found that its unsafe condition was reported to the defendant, and he then neglected to remove or strengthen it.

As already intimated, the mere opinion of prudent and sagacious persons, that the fence was sound, could not be set up as the exclusive standard for determining that fact; especially where so much evidence had been submitted as to the actual physical condition of the fence, from which the jury could form their own conclusions. It was not shown that plaintiff or his daughter had any previous knowledge of the insecurity of the fence; and, moreover, the defendant held no such relation to the fence as required him to be notified by others of its condition before he could be held liable for his negligence in regard to the same. The Court properly denied this prayer.

From our consideration of the rulings excepted to, we find no error in them, and accordingly the judgment must be affirmed.

*Judgment affirmed.*

(Decided 15th January, 1886.)