———o———

## No. 3676.

(Court of Appeal, Parish of Orleans.)

MRS. JAMES W. ELIZARDI vs. THOMAS H. KELLY.

Appeal from Civil District Court, Division "C."

F. W. Sherman and George Montgomery, for Plaintiff and Appellant.

Merrick and Lewis, and Philip Gensler, for Defendant and Appellee.

1. When all the heirs of a succession are Minors, their tutor may, *virtute officii*, administer the Succession to which they are called and may sue on proceedings for the sale of property to pay debts.

2. Whilst our laws have provided no mode to *compel* a regular settlement of a community, dissolved by the death of the wife, it does not follow that, in the absence of opposition on the part of the surviving partner of the creditors of the community, liquidation and settlement of the community may not be made in the wife's succession as well as in the husband's.

279

3. Where the advice and consent of a family meeting is necessary to the validity of a sale, an adjudication made prior to such action is not binding upon the adjudicatee; but if after subsequent ratification by the family meeting and approval of the judge, the adjudicatee consummates the purchase, his title thus acquired is as valid as if the recommendation of the family meeting and order of Court approving the deliberations, had preceded the adjudication.

4. As the rights of community creditors on community property are paramount to the rights of ownership which the surviving spouse had in the property at the dissolution of the community, so also are the rights of such creditors superior to the legal mortgage which the minor heir of his deceased parent has on the portion of the community property coming to the surviving parent; hence it is that an order of Court directing the cancellation of such mortgage, so far as it affects community property which has been sold to pay community debts, does no more than what would result, by operation of law, if no such formal order had been made.

MOORE, J. This was a suit to enforce compliance with an adjudication and from a judgment denying the relief sought, plaintiff appeals.

Plaintiff acquired the property in controversy by purchase from the Succession of Mrs. Lynus W. Brown, and it is the proceedings leading up to that sale which defendant claims are nullities, or, if not nullities, of so irregular a character as to suggest furture litigation, and that hence he is excused from compliance with his bid.

The property was acquired by Lynus W. Brown during the existence of his marriage with Johanna Morris Westervelt, and was so held at the time of the death of the wife on the ....... day of ..... ..... 1903. She died intestate, leaving this and several other pieces of real properties; and, as her sole heirs, three minor children, issue of the marriage aforesaid. Her succession was duly

opened and her surviving husband was duly confirmed and qualified as the Natural Tutor of the minors, with right of administration. Subsequently, and on representing that there were certain debts and charges due by said succession, which it was necessary to pay; that he had not funds in hand with which to pay same, and exhibiting a list of debts, all due by the community and aggregating some $8,100.00, the tutor prayed for and obtained an order for the sale of two pieces of property, to-wit: the Cleveland street property, which is the one in controversy here, and which was appraised at $800.00, and another piece known as the Canal street property, appraised at $3,500.00. After due advertisement the Cleveland street property was adjudicated to the plaintiff and the other property to a Mrs. E. Bowman.

Both these parties refused to comply with the adjudications, basing their refusal on the ground that as the property belonged to minors, no sale thereof was valid which was not authorized by and under the advive of a family meeting, and that as no such family meeting had been held on the premises, the title tender was invalid and they could not be made to accept it. Thereupon the Natural Tutor presented a petition wherein he recited all of the above proceedings leading up to the adjudications; alleging the refusal of the adjudicatees to comply and the reason assigned by them, and "that the total proceeds of the above described properties, if paid by the purchasers, will not be sufficient to pay all the debts due by the estate and by the community; that the prices obtained for said properties were fully up to the value of the same; that it is to the interest of said minors that said sales be executed and ratified; that there exists against the properties sold and those to be sold, a general mortgage against him in favor of his minor children, resulting from his confirmation as Natural Tutor, which should be ordered cancelled and erased from the records of the mortgage office, reserving the rights of the creditors and minors on the proceeds of sale; that in order to execute the sales of the

properties and to give to the purchasers good and valid titles thereto, and in order, further, to pay all the debts due to the estate and by community, it becomes necessary to convoke a family meeting on behalf of said minors, in accordance with law, for the purpose of deliberating and giving their advice upon the subject matter contained in the petition."

Due order having been made on this application a family meeting was convoked and held, and it recommended that the sale be confirmed and ratified, the tutor authorized to accept the price and sign all transfers, and that the general mortgage of the minors bearing on the properties be cancelled and erased, and the creditors and minor's rights be referred to the proceeds. The under tutor concurred in the recommendations and finally the proceedings were duly approved and homologated, the sales confirmed and ratified and the minor's mortgage ordered cancelled and erased, reserving their rights to the proceeds. When this was done the adjudicatees then complied with their bids and accepted title.

This is the title plaintiff now tenders to defendant, and which the latter says is not valid because substantially, the property, as succession property, was not sold under any order of the Court, obtained by a duly appointed and qualified succession representative, the Natural tutor of the minors, who obtained the order of sale, having no authority, *virtute officii,* to represent the succession and to administer its affairs; that even if natural tutors have the right, *ex officio,* of administration of the affairs of the succession to which their wards are called, that right is limited and does not comprehend the power of alienating the succession property under an *ex parte* order of Court, even for the purpose of paying debts; that in no event, however, can the representative of a deceased wife's succession, whether that representative be directly appointed and qualified as such, or is acting as such by virtue of his confir-

282

mation and qualification as Natural Tutor of the minors, be authorized to sell the interest of the succession in community property to pay community debts, forasmuch as that would be, in its effect, à settlement of the community in the wife's succession which is without warrant of law; that if the sale should be considered as being that of minor's property, and not that of sale of succession property, then it is void, because it is not *preceded* by the advice, consent and recommendation of a family meeting duly approved and homologated by the judge; the subsequent convocation of the family meeting, and approval by the judge, being illegal; and finally that the order of Court approving the recommendation of the family meeting to the effect that the minor's mortgage be cancelled and erased and referred to the proceeds of sale, was beyond the authority of the judge to make.

## I.

Whilst the earlier jurisprudence of this State sustains the position that a Natural Tutor, though entitled to administer the property of his children without giving bond, cannot administer upon a succession opened in their favor without having been appointed administrator, and giving security as any other individual, the later jurisprudence is to the contrary. The rule now is that a tutor may, *virtute officii,* administer the succession to which his wards are called, provided, however, that no creditor opposes same. 2 A. 463; 3 A. 502; 7. A. 134; 14 A. 641; 33 A. 1247; 36 A. 747; 46 A. 353. In the instant cause no creditor opposed Brown's right to administer.

## II.

Once it is settled that a Natural Tutor may; *ex officio*, administer upon the estate, it follows that in furtherance of his administration he may do, or cause to be done, all that a duly appointed and bonded administrator may do, and he, therefore, may, as could any other succession representative, obtain all necessary

orders looking to a sale of the succession property to pay the debts. This the natural tutor did in this cause, and, as we must assume in the absence of allegation and proof to the contrary, upon due proof being made of the existence of debts and the necessity for a sale.

III.

The fact that *ex parte* order of sale obtained by the *ex officio* succession representative was for the purpose of compelling a liquidation of the community in the wife's succession does not effect its validity, nor that of any sale made thereunder. Our laws, it is true, have provided no mode to *compel* a regular settlement of a community dissolved by the death of the wife, but it does not follow that in the absence of opposition from the surviving partner of the community and the community creditors, the settlement cannot be made in the wife's succession as well as in that of the husband's, especially as in this case, where the entire effects of the wife's succession consists of community property, and when we consider that under the law the surviving husband has under his control the community property, which is expressly subjected to the payment of the community debts, and that he has, so far as the final settlement and liquidation of the community after its dissolution is concerned the same rights he had during its existence, because he is, after dissolution, under the same responsibilities for the community debts that he was before the dissolution. As said in Hawley, Adm'r, vs. Crescent City Bank, 26 A. 230; "it is but just that he should have these powers because the community property continues under his control until the debts are paid."

. If this right of retention of the community property, vests in the surviving husband so that he may be thus enabled to apply it to the payment of community debts, and such has repeatedly been held to be the law—46 A. 1281; 46 A. 353; 32 A. 790; 43

284

A. 234; 15 A. 636; 37 A. 865; 17 La. 258; 25 A. 314; 26 A. 230; 24 A. 336; 4 A. 389—what valid objections can be urged, when, with the consent of the creditors, the surviving husband and head of the community, proposes to make the settlement and have the liquidation of the community in the wife's succession? It is conceded that the community creditor may provoke, if he so choses, the liquidation in the wife's succession. Why may not the surviving husband, no objection being made thereto by creditors?

In the Succession of Fitzwilliams, 3 A. 489, it was held that upon the death of the wife, the survivor had his election either to sell community property sufficient to discharge the debts promptly and to exercise his usufructuary right upon one-half of the residue; or, if he prefer, to preserve the property unsold, he could only do so on paying the debts himself, or on assuming them, thereby relieving the heirs from the burden of interest, which might ultimately absorb their entire inheritance, and in Irwin vs. Flynn, 110 La., 830, a sale of community property to pay community debts by the administrator of the wife's succession was, *quoad,* the third person purchasing, maintained.

## IV.

Up to this point, we have been considering the plaintiff's title as of the character of one having its source from an ordinary succession sale, made upon the usual *ex parte* order of the succession representative for the purpose of paying debts. Considering it now, as it is claimed by the defendant to be, a sale of minor's property made by their natural tutor, we are then to consider what force there is in the objection made to the effect, to quote from defendant's answer: "that there was originally no family meeting authorizing the sale, and the attempt to satisfy same by a *subse-*

*quent* family meeting was not had upon the petition of the adjudicatee and is a nullity."

As recited above, no family meeting was originally held; subsequently, however, and upon the petition of the Natural Tutor one was held and was duly approved; and although the adjudicatee was not a party to that proceeding, she, nevertheless, acquiesced in the proceedings and took title. It has been repeatedly held that no one but the adjudicatee can take advantage of the fact that the family meeting did not precede the adjudication. If the adjudicatee under this circumstance is willing to take the title, no one may complain. 52 A. 1919; 45 A. 1270; 6 La., 215; C. C. 1794. See also 2 A. 729; 31 A. 167; 52 A. 1402.

<h2 style="text-align:center">V.</h2>

There is no force whatever in the objection made to the effect that the cancellation of the minor's mortgage on the property was illegal. The rights of community creditors on community property are not only superior to any right of mortgage which the minors may have on the property growing out of the tutorship, but they are even paramount to the right of ownership which either the minors or the surviving spouse have in the property at the dissolution of the community. The minor's legal mortgage on the share of the community property coming to the surviving spouse falls, by the operation of law, before the claims of community creditors; hence, when the family meeting recommended the cancellation of the minor's mortgage on the property in question, and when the judge, approving the recommendation, ordered the cancellation thereof, nothing further was accomplished than what would have resulted by the force of the law, had no such recommendation and order been made.

Whether viewed as a title resulting from an ordinary succession sale or from a sale of minor's property, we are of opinion that the plaintiff holds and has tendered a good and valid title to the

defendant and that hence he should be made to comply with the adjudication.

The price of adjudication was $800.00 cash, and it was made on the 9th of November, 1904. Plaintiff is entitled to a judgment for this sum and defendant should be decreed the owner of the property.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby set aside, avoided and reversed, and it is now further ordered, adjudged and decreed that plaintiff, Mrs. J. W. Elizardi, have judgment against the defendant, Thomas H. Kelly, in the sum of eight hundred dollars, with interest thereon at the rate of five per cent. per annum from the 9th day of November, 1904, until paid, and that the defendant be and he is hereby recognized as and declared to be the owner of the property described in plaintiff's petition, impressed, however, with the vendor's privilege to secure the payment of the purchase price as established by this judgment.

Defendant to pay costs of both courts.