487 A.2d 658

**Dick J. TADJER, et al.**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 1014, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Feb. 7, 1985.

Andrea T. Shandell, Rockville (Joel M. Savits, William J. Carter and Carr, Jordan, Coyne & Savits, Rockville, on brief), for appellants, AFA Corp. & Guy M. Amatucci.

Read K. McCaffrey, Baltimore (Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, on brief), for appellants, Tadjer, Cooper, TCSB, Inc. and Tadger-Cohen Associates Inspection Company, Ltd.

A. Katherine Hart, Asst. County Atty., Rockville (Paul A. McGuckian, County Atty., Robert G. Tobin, Jr., Deputy County Atty. and Clyde H. Sorrell, Asst. County Atty., Rockville, on brief), for appellee.

Argued before ALPERT, ROSALYN B. BELL and KAR-WACKI, JJ.

## ON REMAND

ALPERT, Judge.

In this case we are concerned with a municipality's liability to injured occupants of land which had been previously used by the municipality as a landfill. In 1950 Montgomery County leased property at 801 East Gude Drive and used it as a landfill for a period of approximately twelve years. In 1962 the landfill was covered,[1] and the property returned to the owner.

---

1. At the time the county stopped operating the landfill, there were no regulations concerning the proper way to cease operations. Today, the procedures to be followed in closing all or part of the landfill may be found in Code of Maryland Administrative Regulations, Title 10, Subtitle 17, § 11.04E. *See* Md. Health-Environmental Ann.Code, § 9–213(a) (1982).

In 1977, after the property had changed hands several times, appellants [2] acquired and developed it. An auto body shop was built on the property in 1978 and 1979 and on April 14, 1980, Michael S. Wodoslawsky was injured, allegedly as a result of an explosion caused by a build-up of methane gas.

Michael Wodoslawsky sued appellants in the Circuit Court for Montgomery County. Appellants then impleaded appellees Montgomery County and six County employees,[3] by way of third party claims alleging negligence and nuisance. Appellees demurred to the Third Party Declarations and the trial court sustained the demurrers without leave to amend reasoning that (1) the statute of limitations had run on any negligence for which the County may have been liable; (2) the County owed no duty to protect its citizens from the potential dangers associated with property which the County for twelve years had leased and used as a landfill; and (3) the County and its employees were immune from liability arising from its operation of a landfill.

The trial court's decision was appealed to this Court and in an unreported opinion, considering only the issue of governmental immunity, we affirmed. The Court of Appeals then granted a petition for certiorari limited only to the question of governmental immunity. In *Tadjer v. Montgomery County*, 300 Md. 539, 479 A.2d 1321 (1984), the Court of Appeals reversed this Court and the trial court on the issue of governmental immunity. In holding that the resolution of this issue depended upon whether operating the landfill was a governmental or proprietary function, the Court ruled that "no final judgment should have been entered in order that there might be a trial to develop the

---

**2.** Appellants, AFA Corp. and Guy Amatucci, filed one third party declaration; appellants, Tadjer, Cooper, TCBS, Inc. and Tadjer-Cohen Associates Inspection Co., Ltd., filed another third party declaration.

**3.** Although both the trial court and this Court held that the six County employees were protected from suit because of "immunity," the individual liability *vel non* of the employees was not raised in this Court or before the Court of Appeals and, therefore, is not before us for consideration.

extent of the County's 'substantial income,' as well as its expenses, from the operation of the landfill." *Id.* at 550, 479 A.2d 1321. The case was then remanded to us for "consideration of the other issues raised by the [appellants] in their appeals [to us]." *Id.* at 554, 479 A.2d 1321.

The remaining issues are as follows:

1. the trial court erred in ruling that the third party claims against the County and its employees were barred by the Statute of Limitations; and

2. the trial court erred in ruling that the duties alleged to have been breached by Montgomery County did not exist as a matter of law.

We agree with appellants as to both issues and, accordingly, reverse the trial court's dismissal of these Third Party Declarations. We emphasize that if the trial court determines that the operation of the landfill was a governmental function, then of course the case is ended and our decisions in Part I and II hereof will not be implemented.

### I. *Statute of Limitations*

The trial court found that the negligence counts against the appellees concerned conduct that occurred more than three years prior to the filing of the third party declarations. Consequently, the trial judge held that the applicable statute of limitations (Md.Cts. & Jud.Proc.Code Ann., § 5–101 (1974, 1984 Repl.Vol.)) barred the third party claims against the County and its employees.

We agree with appellants that the three-year statute of limitations contained in § 5–101 is not a bar to suit where, as here, the actions are for indemnity and contribution.

In *Read Drug Co. v. Colwill Construction Co.*, 250 Md. 406, 243 A.2d 548 (1968), the Court of Appeals, in dicta, acknowledged that the right of indemnity or contribution does not accrue until one suffers, pays judgment or settles with the plaintiffs. *Id.* at 422, 243 A.2d 548. *Read*, like the case *sub judice*, involved, among other things, the filing of

a third party claim originally held to have been barred by the statute of limitations.

Later, in *Cotham & Maldonado v. Board*, 260 Md. 556, 773 A.2d 115 (1971) the Court of Appeals stated:

'all [Maryland courts] who have had occasion to consider the matter have agreed that the right both to indemnification and to contribution; whether based on contract or tort, accrues at the time of payment and not before.'

*Id.* at 566, 273 A.2d 115 (quoting *So. Md. Oil Co. v. Texas*, 203 F.Supp. 449, 452–53 (D.Md.1962)).

A review of cases in other jurisdictions indicates that Maryland is in accord with the majority of states.

■ The general rule provides that where one person is liable for a tort actually committed by another, the statute of limitations as against his right to be indemnified by the actual tortfeasor commences to run not from the time of the commission of the tort or of the resulting damage or injury, but from the time he pays, or is ordered to pay, the injured person. Annot., *Contribution, Indemnity Claims—Timeliness*, 57 A.L.R.3d 867, 872, and cases cited therein.

■ Consequently, inasmuch as the claims upon which the instant third party actions are based do not accrue from payments already made, they are not yet mature. The statute of limitations has not even begun to run, much less operate as a bar to suit. This fact, however, does not affect appellants' right to bring the third party claim. Former Maryland Rule 315(a) (now 2–332(a)) provides for the filing of a third party suit when a defendant alleges a third person or group *"is or may be liable* to [defendant] for all or part of the plaintiffs' claim against [defendant]." (emphasis added). Appellants, therefore, can bring suit prior to becoming liable to the original plaintiff and these actions are not barred by the operation of any statute of limitations since it is appellants' liability and not appellee's negligence which commenced the running of the statute of limitations.

## II. *Duty Owed By The County*

Appellants contend that appellee, Montgomery County, had a duty to "protect the citizens from the potential dangers associated with property" that had once been used as a landfill. Montgomery County is in a unique position, however, because it is not now the owner of the property nor was it ever the owner; it merely leased the property. Moreover, it is no longer an occupier as its tenancy ceased around 1962.

A century ago in *Hussey v. Ryan*, 64 Md. 426, 2 A. 729 (1885) the Court of Appeals upheld a jury instruction given by the trial judge which indicated that a tenant who abandoned the leased premises prior to the plaintiff's injury was, nevertheless, liable for any hazardous condition created by him. The hazardous condition in *Hussey* was a fence left by the tenant in a state of disrepair. The accident occurred when, shortly after abandoning the premises, the fence fell and injured a child.

Restatement (Second) *Torts*, Section 386 provides:

Persons Other Than Possessor, Members of His Household, and Those Acting on His Behalf Who Create Dangerous Condition

Any person, except the possessor of land or a member of his household or one acting on his behalf, who creates or maintains upon the land a structure or other artificial condition which he should recognize as involving an unreasonable risk of physical harm to others upon or outside of the land, is subject to liability for physical harm thereby caused to them, irrespective of whether they are lawfully upon the land, by the consent of the possessor or otherwise, or are trespassers as between themselves and the possessor.

Section 386 thus establishes that the creator of a dangerous condition has some duty to persons upon or outside of the land if the condition created involves an unreasonable risk of harm.

This Section would appear, on its face, to cover Montgomery County in this case, inasmuch as the County is or was the creator of the alleged dangerous condition at issue and it is no longer a possessor of the property. While no case which cites this particular section of the Restatement is precisely on point, some do nonetheless hold the creator of a dangerous condition on land liable for injuries resulting therefrom. *See Escobedo v. Ward*, 255 Or. 85, 464 P.2d 698, 701 (1979) (plaintiff's decedent killed during dirt slide; defendant, contractor who dug dirt from bank; basis for liability was defendant's participation in creating on the land of another an artificial condition which he should have recognized as involving an unreasonable risk of harm to others who might come upon the land); *McFarland v. Commercial Boiler Works, Inc.*, 10 Wash.2d 81, 116 P.2d 288, 292 (1941) (contractor who had completed removal work prior to time of accident liable because it created, maintained and left a dangerous condition).

Imposing liability on a person who creates a dangerous condition has not been limited to the adoption of the restatement section discussed above. In *Merrick v. Murphy*, 83 Misc.2d 39, 371 N.Y.S.2d 97 (1975), the plaintiff's decedent was killed when his car left the roadway and entered a lake. The defendant, a former owner of the property where the lake was located, had ordered the demolition of a containing wall and directed the excavation of the lake. The plaintiff alleged that the defendant, by his conduct, had negligently created a dangerous condition which caused the accident. The Court, in denying summary judgment, noted that as a "general rule, premises' liability, whether framed in negligence or nuisance, is predicated on the theory that one who owns, occupies or controls property should bear the responsibility for its condition." *Id.* at 99. The Court noted a distinction, however, "between mere negligent maintenance of property and affirmative acts of negligence in the actual creation of a nuisance or dangerous condition." *Id.* at 100. In the latter instance, it held that "ownership [was] immaterial and the fact that defendant transferred his interest in

the property prior to the date in question [did] not render the complaint insufficient as a matter of law." *Id.*

In cases more analogous to the case *sub judice,* the same theory of liability has been used to hold a non-owner or occupier liable for the creation of a dangerous condition or nuisance. In *State Dept. of Environmental Protection v. Exxon Corp.,* 151 N.J.Super. 464, 376 A.2d 1339 (1977), the defendant, Exxon, had owned property upon which it operated storage and refining facilities; the property became polluted when Exxon "spilled, permitted to leak and intentionally discharged massive quantities of oil on and into the ground . . . ." *Id.* at 1342. Exxon sold part of the property to the defendant, ICI America, Inc. The State of New Jersey filed suit against both seeking to enjoin further pollution of the oil and gas which was leaking into the waterways; they settled with Exxon. The Court, in dismissing the complaint against ICI, stated that it would not place upon ICI the burden of "abating a condition which it neither created nor contributed to, on the mere basis of ownership," because, "[i]n this industrial age ownership has no more relationship to the problems of pollution than did the theory of privity of contract to the problem of products liability." *Id.* at 1350. The party to be held responsible, on the other hand, was Exxon because it was the creator of the nuisance and remained liable even after alienating the property. *Id.* at 1349.

Also, in *Ryan v. Commonwealth, Dept. of Environmental Resources ("DER"),* 30 Pa.Cmwlth. 180, 373 A.2d 475 (1977), the Pennsylvania courts held that the DER had the authority to order a former tenant who operated a landfill to take affirmative actions on the property to abate its pollution. The tenant had ceased operation of the landfill when his lease terminated in January, 1975. In July, 1975, DER ordered the former tenant to "implement a rodent-and-vector-control program at the site, to reshape the existing uncovered slope, to compact, cover and revegetate the landfill, and to construct and manage a surface-water diversion system." *Id.* at 476. The Court, in holding that DER had

the authority to issue such an order, noted that ownership of the land where the nuisance was located was immaterial. The defendant who carried on business in such a manner as to create the nuisance was liable for its abatement. *Id.* at 478 (citing *Del. Div. Canal Co. v. Commonwealth*, 60 Pa. 367, 374 (1869)). *See also State Dep't of Environmental Protection v. Ventron*, 463 A.2d 893 (N.J.1983) (former owner, lessee and present occupant all liable under common law principles for abatement of nuisance created by dumping of mercury); and Grad, *Treatise on Environmental Law*, § 4A.05[2] (1982).

■ While we realize that the cases concerning toxic wastes order only abatement,[4] we believe that the reasoning of these cases when combined with the rationale of those cases which impose liability on the creator of a dangerous condition and/or nuisance compel the conclusion that de-

---

**4.** We have uncovered no case wherein a former occupier of land has been held liable for personal injury alleged to have resulted from toxic wastes. One text writer has observed:

> With thousands of hazardous waste disposal sites dispersed over the nation, and with years and years of inattention to the impact of hazardous substances and wastes on the surface and subsurface waters, including impact on aquifers and soil, there is a great probability that the impact on human health will be substantial and that there will be an increasing number of claims for personal injuries from year to year. To be sure, at the time of this writing, in early 1982, there is neither complete agreement on the precise hazard presented by hazardous waste sites, nor are there significant numbers of reported cases involving injuries from exposure to such sites. The reasons for the lack of reported decisions are in part the recency of the awareness of such injuries, and in part the fact that many defendants in such cases have preferred to settle rather than to have reported decisions that might provide a legal basis for the litigation of other claims. But perhaps the most important reason for the lack of reported cases is the nature of the injury itself— many of the toxic and hazardous substances involved in such exposure give rise to injuries with latency periods up to forty years and even longer. The long latency periods of such injuries raise other problems in the litigation of such cases—relating to statutes of limitation, proof of causation, and to proper parties defendant— which make the litigation of claims difficult, and which require discussion here.

Grad, *Treatise on Environmental Law*, § 4A.05[1], 4A–151 (1982).

fendants who create these conditions, owe a duty to persons affected by their conduct. From these cases a simple rule emerges: if the defendants knew or should have known that the artificial condition created by them involved an unreasonable risk of physical harm to others, then they have a duty to make safe or warn of the dangerous condition. *State, Dept. of Environmental Protection v. Ventron,* 463 A.2d 893 (N.J.1983); *State, Dept. of Environmental Protection v. Exxon Corp.,* 151 N.J.Super. 464, 376 A.2d 1339 (1977); *Merrick v. Murphy,* 83 Misc.2d 39, 371 N.Y.S.2d 97 (1975); *Escobedo v. Ward,* 255 Or. 85, 464 P.2d 698 (1970); *Ryan v. Com. Dept. of Environmental Resources,* 30 Pa.Cmwlth. 180, 373 A.2d 475 (1977); *McFarland v. Comm'l Boiler Works, Inc.,* 10 Wash.2d 81, 116 P.2d 288 (1941). Knowledge of the risk at the time the condition was created is a prerequisite to liability. *See* Restatement *Torts* (Second) § 386 (1965); Prosser, *Torts,* § 31 (5th ed. 1984). Consequently, we believe the trial court erred in finding, as a matter of law, that Montgomery County owed no duty with respect to the landfill.

In the case *sub judice,* appellants allege that appellees created a dangerous condition by permitting methane gas to accumulate on the property without giving notice of the condition. Their Third Party Declarations, although not models of clarity, allege that: (1) the County had a duty to protect the citizens from the dangers associated with the property; (2) the County was or should have been aware that the property had once been used as a landfill; (3) the County was fully aware and had actual knowledge of the probable existence and potential dangers associated with methane gas; (4) the County should have taken steps to alert the public and future purchasers of such conditions; and (5) the County should have taken precautions for the release of the accumulating methane gas.

In ruling on a demurrer, we must accept the facts pleaded as true. *Nistico v. The Mosler Safe Co.,* 43 Md. App. 361, 405 A.2d 340 (1979). In order to withstand

appellee's demurrer, appellants need only allege facts which, if proven, would entitle them to relief. *Hooke v. Equitable Credit Corp.*, 42 Md.App. 610, 616, 402 A.2d 110 (1979).

■ We believe that the allegations contained in appellants' Third Party Declarations are sufficient. Appellants allege that the County knew or should have known of the probable existence of the potential dangers associated with methane gas. It is also alleged that the County had a duty to protect citizens from the dangers resulting from a condition they created. Finally, a breach of this duty is alleged in the County's failure to warn of the fact that the property had once been used as a landfill and in its failure to take precautions to prevent or remedy the dangerous condition. Thus, there were adequate allegations of negligence in the Declarations and it was error for the trial court to sustain appellee's demurrer to them.

Accordingly, we reverse.

JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.