MYERS, J.,
for the Court:
¶ 1. Deborah and Harry Miller appeal from the Hancock County Circuit Court’s grant of a directed verdict in their suit against Coast Electric Power Association. The Millers assert that genuine disputes of material fact exist. We reverse and remand.
FACTS
¶ 2. Deborah and Harry Miller reside in a trailer on Meaut Road in Harrison County. In June of 1997, Harrison County began a project to widen the road where the Millers live. This project involved moving power poles back a few feet, which was done by Coast Electric. The project concluded in October of 1997.
¶ 3. One morning while walking her child to the bus, Deborah stepped in the hole where the power pole had been and her foot sank about twelve inches into mud. She was injured and required medical treatment by an orthopedic surgeon. The Millers notified Coast Electric and they sent a crew to backfill the hole.
¶ 4. Coast Electric’s method of moving power poles involves digging the new hole, transferring the pole to the new hole, then using the dirt from the new hole to fill in the old hole. This is apparently what took place with the power pole in front of the Miller’s home. Evidence was introduced at trial to show that the pole was not placed as deeply in the ground in the new hole as it was in the old hole. Thus, an inference may be drawn that the dirt from the new hole would not completely fill in the old hole. Harry Miller noticed that the pole transfer had taken place, but Deborah claims that she did not notice the power pole transfer and was not warned. Timothy Adam, a Coast Electric employee, testified that he told a woman that the work was to be done, but he did not remember if the woman was Deborah Miller.
¶ 5. The Millers filed suit against Coast Electric and the trial judge granted Coast Electric a directed verdict. In its order, the trial court stated that there were no “disputed questions of material fact for jury resolution” and “no reasonable juror could find for the Plaintiffs based upon the evidence submitted.” The transcript of the motion hearing reflects the following:
The Court: Well, right or wrong, it’s my view that-the only possibility would be that Coast Electric knew or should have known that over a period of time that dirt would settle. And if they had an obligation, then that they should have gone back and checked these holes. In my view, I do not believe that a reasonable minded juror could find that they had not performed their work in a workmanlike manner by reasonably backfill-ing, piling it up and tamping it. And just a mere inference here that could be drawn in some fashion that the pole was not as deep in the second location as in *316 the first location would just be pure surmise, speculation and conjecture on their part that there was inadequate dirt to fill it.The positive testimony is that they did find other soil to place in there, because it was done. The person that did it, Mr. Adam, was there and did it, and there’s no conflict there.
LAW AND ANALYSIS
¶ 6. When reviewing a trial court’s decision to grant a directed verdict, this Court must consider the motion in the light most favorable to the party opposing the motion. Benjamin v. Hooper Elec. Supply Co., 568 So.2d 1182, 1187 (Miss.1990). The evidence of the non-moving party is to be believed and all justifiable inferences are to be drawn in that party’s favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
¶ 7. First, the Millers argue that Coast Electric had a continuing duty to maintain the hole left when they transferred the pole. An ownership interest is necessary to give rise to a duty to maintain the premises. Joseph v. Tennessee Partners Inc., 501 So.2d 371 (Miss.1987). Due to the fact that Coast Electric did not have an ownership interest in the hole after the power pole was moved, we find that Coast Electric did not have a duty to maintain the premises.
¶ 8. Secondly, the Millers argue that Coast Electric had a duty to warn them of the dangerous condition of the hole and that there is a genuine issue of material fact as to whether that warning occurred. Lastly, the Millers argue that the refilling of the hole was not done in a safe and thorough manner.
¶ 9. The Restatement (Second) of Torts § 328B, Functions of Court, provides that in an action for negligence the court determines:
(a) whether the evidence as to the facts makes an issue upon which the jury may reasonably find the existence or non-existence of such facts;
(b) whether such facts give rise to any legal duty on the part of the defendant;
(c) the standard of conduct required of the defendant by his legal duty;
(d) whether the defendant has conformed to that standard, in any case in which the jury may not reasonably come to a different conclusion;
(e) the applicability of any rules of law determining whether the defendant’s conduct is a legal cause of harm to the plaintiff; and
(f) whether the harm claimed to be suffered by the plaintiff is legally com-pensable.
Miss.Code Ann. § 11-27-43 (1972) states:
All companies or associations of persons incorporated or organized for the purposes set forth in section 11-27-41 are authorized and empowered to erect, place and maintain their posts, wires and conductors along and across any of the public highways, streets or waters and along and across all turnpikes, railroads and canals, and also through any of the public lands, and to do such clearing as may be reasonably necessary for the proper protection, operation and maintenance of such facilities, provided in all cases such authorization shall meet the requirements of the National Electrical Safety Code. The same shall be so constructed and placed as not to be dangerous to persons or property; nor interfere with the common use of such roads, streets, or waters; nor with the use of the wires of other wire-using companies; or more than is necessary with the convenience of any landowner.
*317 ¶ 10. This statute places a strict duty on public utilities not to harm the public while an ownership interest continues in the land where the public utility has a right of way. However, the statute is silent as to whether Coast Electric had a duty to leave the land in a safe condition when their ownership interest ended.
¶ 11. Due to the lack of case law concerning this issue, we must turn to law in other jurisdictions. In Tadjer v. Montgomery County, 61 Md.App. 492, 487 A.2d 658 (1985), a man was injured as a result of an explosion caused by a build-up of methane gas. The gas build-up was the result of a landfill which was on the property several years prior to the accident when the county was leasing the property. Like the issue in the case at hand, the issue in Tadjer was whether the county owed a duty to the public despite the fact that it never owned the land and had not occupied the land for some time. The Tadjer court turned to an older case, Hussey v. Ryan, 64 Md. 426, 2 A. 729 (1885), and the Restatement (Second) of Torts Section 386 in deciding that the creator of a dangerous condition has some duty to people who may encounter the condition if the condition created involves an unreasonable risk of harm. The Tadjer court also cited Merrick v. Murphy, 83 Misc.2d 39, 371 N.Y.S.2d 97 (1975), which held that when a dangerous condition is created on land, “ownership is immaterial.” As stated by the court in Tadjer, “If the defendants knew or should have known that the artificial condition created by them involved an unreasonable risk of physical harm to others, then they have a duty to make safe or warn of the dangerous condition.” Tadjer, 487 A.2d at 662.
¶ 12. We find that Coast Electric did have a duty to make safe or warn of a dangerous condition left by them on land they once occupied. Therefore, the trial court erred in granting a directed verdict due to the possible inference that the hole was not properly backfilled.
¶ 13. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING and CHANDLER, JJ., concur.