492 A.2d 674

**Richard D. DICK, et ux.,**

**v.**

**MERCANTILE–SAFE DEPOSIT AND TRUST COMPANY, et al.**

No. 1243, Sept. Term, 1984.

Court of Special Appeals of Maryland.

May 17, 1985.

Thomas G. Slater, Frederick (James W. Respess, Frederick, on the brief), for appellants.

H. Patrick Stringer, Jr., Towson (T. Rogers Harrison and Mudd, Harrison & Burch, Towson, on the brief), for appellees.

Argued before WILNER, ADKINS and BLOOM, JJ.

ADKINS, Judge.

Appellants Richard and Joyce Dick, affronted by conduct and language used during debt-collection efforts by appellee Edward C. Mullendore, vice-president of appellee Mercantile-Safe Deposit and Trust Company, sued Mercantile and Mullendore in the Circuit Court for Frederick County. In their declaration they charged, among other things, violation of the Maryland Consumer Debt Collection Act (count I) and intentional infliction of severe emotional dis-

tress (count II).[1] The court eventually sustained appellees' demurrer without leave to amend. Appellants aver that this was error.

Specifically, appellants argue that the transaction that produced the debt-collection activity was a consumer transaction as defined in § 14–201(c) of the Commercial Law Article. On the basis of this, they contend that Mullendore (and through him Mercantile) used sufficiently "obscene or grossly abusive language in communicating with [them]" to present a jury question of violation of § 14–202(7). And they aver that Mullendore's (and hence the Bank's) conduct was so "extreme and outrageous" as to entitle them to present to a jury their claim of intentional infliction of severe emotional distress.

■ Since these questions arise on demurrer, we accept as true the well-pleaded factual allegations of appellants' second amended declaration.[2] To withstand a demurrer, a declaration "need only allege facts which, if proven, would entitle [the plaintiffs] to relief." *Tadjer v. Montgomery County*, 61 Md.App. 492, 502–03, 487 A.2d 658 (1985). Our first endeavor, therefore, must be to summarize the well-pleaded facts in appellants' declaration.

### Facts

According to the declaration, appellants are licensed pilots, although neither is employed as a commercial pilot. They have a residence in Frederick, Maryland, and another in West Point, Virginia. There are airports near both residences, thus making it convenient to commute between their residences by air.

---

1. Appellants also alleged conversion, but that issue is not before us.

2. This case was decided before July 1, 1984. Under current practice, appellants would initiate their action by filing a complaint. Md.Rule 2–302. Appellees' challenge to the legal sufficiency of that complaint would be made by motion to dismiss. Md.Rule 2–322(b).

In 1981, appellants purchased a 1980 Arrow Aircraft. To fund the purchase they borrowed $93,042 from Mercantile. The loan was to be repaid in 84 consecutive monthly installments of $1,107.65, beginning on March 26, 1981. To help defray the cost of the airplane, appellants occasionally leased it to others when they were not using it for personal and family purposes.

Appellants failed to make all their monthly payments on time. Because of their delinquencies, three telephone conversations and one meeting took place, including either or both of appellants and appellee Mullendore. These incidents occurred over a period of about nine months, beginning in May 1982. Putting aside appellants' conclusory characterizations of Mullendore's conduct and language as "threatening, grossly abusive, vindictive, unprofessional and extreme and outrageous," we find the following factual allegations in the declaration:

Mullendore shouted at appellants and spoke in angry tones. He said he had heard they were getting a divorce. He threatened that if appellants declared bankruptcy he would attach their homes and wages. He insisted that delinquent payments be made in cash, rather than by check. He demanded that they not contest a summary judgment proceeding Mercantile had brought to collect its indebtedness. At a meeting with Mrs. Dick at the Frederick Airport, following a third repossession of the airplane, Mullendore again threatened to attach her house and salary, insisted on payment of $441, and thanks to his arrogance, reduced Mrs. Dick to tears. After a fourth repossession, Mullendore called Mrs. Dick at her office and shouted so loudly that a third party who was present could hear his remarks. He interrupted Mrs. Dick throughout this conversation, accused her of lying, and said "[y]ou're not as stupid as you act." When Mrs. Dick suggested that Mercantile might be liable for lost rentals on the airplane, he yelled "[A]re you trying to scare me? I'm not afraid of something like you." Later, Mullendore reported to The Credit Bu-

reau, Inc., that Mrs. Dick had a history of delinquent credit obligations.

The question we now address is whether these facts, if proven, would be sufficient to sustain an action either for intentional infliction of emotional distress or for violation of § 14–202(7) of the Commercial Law Article.

## Infliction of Emotional Distress

■ The elements of the tort of intentional infliction of emotional distress are set forth in *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611 (1977), *affirming Jones v. Harris*, 35 Md.App. 556, 371 A.2d 1104 (1977). They are:

(1) The conduct must be intentional and reckless;

(2) The conduct must be extreme and outrageous;

(3) There must be a causal connection between the wrongful conduct and the emotional distress;

(4) The emotional distress must be severe.

All of these elements must "coalesce" if liability is to be imposed. *Id.* We focus here on the second element. If the allegations were not sufficient to show extreme and outrageous conduct, the demurrer was properly sustained as to count II even if we assume, *arguendo*, that the other three elements were adequately alleged.

■ As to what constitutes extreme and outrageous conduct in the context of this tort, the Court of Appeals has quoted with approval comment d to § 46, *Restatement (Second) of Torts*. *Vance v. Vance*, 286 Md. 490, 506, 408 A.2d 728 (1979); *Harris*, 281 Md. at 567, 380 A.2d 611. That comment explains:

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. [Liability does not extend, however,] to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in

the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. . . .

Put otherwise, extreme and outrageous conduct exists only if "the average member of the community must regard the defendant's conduct . . . as being a complete denial of the plaintiff's dignity as a person." *Alsteen v. Gehl*, 21 Wis.2d 349, 124 N.W.2d 312, 318 (1963). We do not think Mullendore's conduct, as alleged, achieved this level of outrageousness.

■ The threats made by Mullendore were essentially that he, or Mercantile, would attach appellants' home and wages. A creditor has a right to insist on payment of a just debt, however, and may "threaten to resort to proper legal procedures to enforce the obligation, even if the steps taken cause some degree of mental anguish and anxiety." Annot., 87 A.L.R.3d 201, 205 (1978). As to the repossessions, appellees had the right to repossess the collateral when appellants were in default.

■ As to harassment by telephone call, the number of calls involved here were fewer, and their content less threatening, than those held not to constitute harassment in *Household Finance Corp. v. Bridge*, 252 Md. 531, 250 A.2d 878 (1969). Moreover, one of the calls in the case *sub judice* was initiated by Mrs. Dick, not by Mullendore. The "lying" accusation may have been rude, but it surely did not amount to "a complete denial of [Mrs. Dick's] dignity as a person." So far as shouting is concerned, the declaration suggests that this was often mutual and that there was considerable thrust and parry during the conversations. In any case, in *Continental Casualty Co. v. Mirabile*, 52 Md.App. 387, 405, 449 A.2d 1176 (1982), we held that "yelling and screaming" by a supervisor at "an extremely sensitive young man," although perhaps rude and violent, did not amount to conduct so extreme and outrageous as to establish intentional infliction of emotional distress.

Nor can the inquiries about appellants' marital status be viewed as extreme and outrageous under the circumstances. Mullendore was concerned about a delinquent $93,000 loan, the primary source for repayment of which was the joint incomes of Mr. and Mrs. Dick. Appellants themselves offered their (apparently temporary) separation as an excuse for some missed payments.

The conduct and language involved in cases such as *Harris* and *Mirabile* fairly can be said to have been more egregious than that alleged here, yet in those cases recovery was denied. Of similar import is *Beye v. Bureau of National Affairs,* 59 Md.App. 642, 477 A.2d 1197, *cert. denied,* 301 Md. 639, 484 A.2d 274 (1984). There, the plaintiff alleged that for six years, his supervisor, among other things, "threatened to fire him, harassed him and physically assaulted him...." Affirming the sustaining of a demurrer, we held that the allegations failed to establish extreme and outrageous conduct. *See also Alsteen,* 124 N.W.2d 312; and *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976). The short of it is that if appellants' allegations are true (as we must take them to be for purposes of demurrer), Mullendore's language and conduct was rude, discourteous, uncivil, and even to some extent unreasonable. It was not what one would expect of a high-ranking officer of a major financial institution. Mr. Jarvis Lorry would not have acted so in attempting to collect a debt for Tellson's Bank.[3] But when we apply the teaching of the Maryland cases, we cannot hold that appellants' declaration charged extreme and outrageous conduct sufficient to establish the tort of intentional infliction of emotional distress.

### Maryland Consumer Debt Collection Act

Section 14–202 of the Commercial Law Art. provides:

---

3. C. Dickens, *A Tale of Two Cities.*

In collecting or attempting to collect an alleged debt a collector may not:

\* \* \* \* \* \*

(7) Use obscene or grossly abusive language in communicating with the debtor or a person related to him.[4]

By virtue of § 14–203 "[a] collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." Count I of appellants' second amended declaration sought to impose liability on appellees pursuant to these provisions.

Sections 14–202 and 14–203 apply only when a "collector" is attempting to collect "an alleged debt." A "collector" is "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Section 14–201(b). A "consumer transaction" is "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." Section 14–201(c).

The parties disagree as to whether appellants' purchase of the airplane, and the attendant loan, constituted a "consumer transaction." According to appellants, the transaction is covered if the airplane was to be used "primarily" for "personal, family, or household purposes." Appellees, on the other hand, assert that the statute applies only if the airplane was to be used "exclusively" for those purposes. The issue arises because of appellants' admission that the airplane was at least occasionally to be leased to others. It is a difficult one because the statutory definition of "consumer transaction" contains neither the adverb "primarily" nor the adverb "exclusively."

The trial court agreed with appellees' construction. Whether that was error we need not determine. Even if we

---

4. Since appellants did not allege that any of Mullendore's language was obscene, we focus on the "grossly abusive" provision.

assume, without deciding, that the transaction was within the statute, we hold that Mullendore's language was not "grossly abusive." *Webster's Third New International Dictionary of the English Language* (1976). We do not think that threats to use lawful procedures to collect a delinquent debt fall within this definition. The same is true with respect to inquiries about marital status—at least in the context of this case—as well as to Mullendore's remark that he didn't "give a damn" whether appellants took bankruptcy, and his reference to the "damn airplane." Some of this may have been harsh, but it was not insulting. Mullendore's characterization of Mrs. Dick as a liar may have been both harsh and insulting, and hence, abusive. But the statute calls for language that is "grossly" abusive. Whether this requirement must equate with "extreme and outrageous," we need not decide. It requires language that is more than merely abusive,—language that is "flagrantly" (*Webster's*) or "greatly" (*Black's Law Dictionary* (Rev. 4th ed.)) abusive. As a matter of law, we hold that Mullendore's language, as alleged, was not "grossly abusive." [5] Therefore, the demurrer to count I was properly sustained.

JUDGMENT AFFIRMED. APPELLANTS TO PAY THE COSTS.

---

**5.** We again note that if appellants' claims are true, Mullendore's language hardly comported with that degree of civility one expects of a bank officer. We do not view it with approval. But incivility is not the test under § 14–202(7); "grossly abusive" language is.