521 A.2d 1246

**John Matthew REAGAN**

v.

**Glenda Ann RIDER.**

**No. 776 Sept. Term, 1986.**

Court of Special Appeals of Maryland.

March 6, 1987.

John E. Bohlen, Jr. of Baltimore, for appellant.

Charles S. Rand (Bruce H. Cherkis, on the brief), Rockville, for appellee.

Argued before BLOOM, KARWACKI and POLLITT, JJ.

POLLITT, Judge.

Ten years ago the Court of Appeals, in *Harris v. Jones*, 281 Md. 560, 380 A.2d 611 (1977), affirmed the holding of this Court, in *Jones v. Harris*, 35 Md.App. 556, 371 A.2d 1104 (1977), recognizing intentional infliction of emotional distress as an independent tort in Maryland. The Court of Appeals, noting that 37 jurisdictions appeared then to have recognized the tort as a valid cause of action, adopted the reasoning of the Supreme Court of Virginia in *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974), holding that four elements must coalesce to impose liability for intentional infliction of emotional distress.

(1) The conduct must be intentional or reckless;

(2) The conduct must be extreme and outrageous;

(3) There must be a causal connection between the wrongful conduct and the emotional distress; and

(4) The emotional distress must be severe.

The Court said that close adherence to these four elements, essentially those set forth in § 46 of the *Restatement (Second) of Torts*, ch. 2, Emotional Distress (1965), would minimize the problems of distinguishing the true

from the false claim and the trifling annoyance from the serious wrong.

Since that time many attempts have been made, nearly all of them unsuccessful, to extend the principles of that tort to the facts of a particular case.

In the case before us today, we shall hold that the evidence presented to a jury in the Circuit Court for Baltimore County was sufficient to enable that jury to find that the conduct of appellant, John Matthew Reagan, was the cause of emotional distress suffered by appellee, Glenda Ann Rider, and that such emotional distress was "severe." Appellant does not challenge the findings that his conduct was "intentional or reckless," and that it was "extreme and outrageous." We shall hold, therefore, that Judge John F. Fader, II, did not err when he denied appellant's motions for judgment.

Appellee sued appellant, her stepfather, for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and invasion of privacy. The factual predicate for all of the counts was a pattern of sexual abuse continuing over a period of several years. All counts except the intentional infliction of emotional distress were dismissed either prior to or during the trial. That count was submitted to the jury, resulting in a verdict for appellee in the amount of $28,845 ($18,845 compensatory damages and $10,000 punitive damages). This appeal is from the judgment entered on that verdict.

On appeal, Reagan presents two questions:

(1) Whether the evidence presented at trial was legally sufficient to allow submission of the case to the jury on the issue of causation?

(2) Whether the evidence presented at trial was legally sufficient to allow submission of the case to the jury on the issue of the severity of the emotional distress?

Appellee testified that, beginning when she was ten years of age, she lived with her mother, stepfather, grandmother and two stepbrothers in Baltimore County. Her mother, a

nurse, often was required to work during the evening hours. It was during these times that the sexual abuse occurred. What began as harmless backrubs soon progressed to sexual contact, including masturbation and cunnilingus, but not sexual intercourse. She said there were several hundred such encounters over a six-year period, when she was between the ages of 11 and 17. As a child, she enjoyed the attention and did not resist, but, as she grew older and began to understand the nature of such activities, she tried to avoid him and resisted his advances, which precipitated heated arguments. As she approached graduation from high school, appellant told her she would have to either submit to his advances or leave the home. She left home shortly thereafter and went to live with her father. In response to her mother's urgings that she return home, appellee finally told her mother of the sexual abuse and was persuaded by her mother to report it to the police. Appellant was tried and acquitted of the criminal charges.

Appellee testified that these experiences caused her to suffer extreme embarrassment, humiliation, mortification and depression, and caused her to gain weight to the point of obesity. The pattern of sexual abuse prevented her from forming normal personal relationships and caused her to engage in what she felt were improper and unusual sexual activities, including homosexual and group sex and masturbation.

Dr. Michael K. Spodak, a forensic and clinical psychiatrist, whose qualification as an expert witness was conceded, testified that appellee first came to him in April of 1982. She had a number of ongoing psychological conflicts. She was "mistrustful" of other people, especially men, and seemed to have no ability to form any "lasting interpersonal relationships." She suffered from a lack of self-confidence, "low self-image and low self-esteem." She had seen Dr. Spodak 12 times in 1982, but only once in 1983 and once in 1984 when she was attending college. Dr. Spodak's opinion was that she had deteriorated psychologically and emotion-

ally during that period and that she needed another "year and a half to two years" of weekly therapy. He said she was not psychotic. His diagnosis was "dysthymic disorder," which he defined as depression in reaction to a series of events. He stated:

> I feel that she suffered psychiatric and psychological harm as a result of the sexual misconduct. This would be particularly reflected in her ability to perform in satisfying adult relationships and her sexual adjustment. This might not be particularly reflected in her functional ability, which seemed to be quite adequate.

At the time of the trial, appellee was a college student with above average intelligence, receiving good grades, and able to function adequately in many of her daily activities.

Further facts will be supplied as the need arises.

## I

### Causation

■ Appellant asserts that because appellee's emotional distress did not become apparent immediately after and in direct response to the sexual acts, she failed to show a causal connection. He posits that we so held in *Moniodis v. Cook*, 64 Md.App. 1, 494 A.2d 212, *cert. denied*, 304 Md. 631, 500 A.2d 649 (1985), when we said:

> The evidence concerning the cause of Ms. Cook's distress is similarly unequivocal: her testimony and that of her husband revealed that she was affected immediately following and in direct response to her termination.

64 Md.App. at 19, 494 A.2d at 221. While the emotional distress in *Moniodis* did follow immediately after and in direct response to an act, we did not hold it to be a requirement that the distress must *immediately* follow the event which caused it.

Appellant further suggests that there was evidence of other traumatic events which could have contributed to appellee's distress, such as conflicts with her mother and

her obesity. Completely aside from the fact that there is no requirement that a proximate cause be the sole cause of an injury, *Certain-Teed Prod. v. Goslee Roof.*, 26 Md.App. 452, 339 A.2d 302, *cert. denied,* 276 Md. 739, 741 (1975), the testimony in this case is that the other possible causes of appellee's distress were directly attributable to appellant's conduct. Her conflicts with her mother were largely based on a feeling that her mother "let her down" by failing to leave appellant as promised and by paying his legal fees for the criminal trial. She testified specifically that all her problems were due to his conduct. Dr. Spodak stated:

Based on the history Ms. Rider gave me, which indicates that the main source of trauma was the sexual abuse from her stepfather, I feel that what she has experienced, what I saw in her and the types of symptoms and problems she had is very, is totally consistent with someone who's been sexually abused.

On cross-examination as to other possible causes, he said:

There are a lot of things that could cause [the dysthymic disorder]. In my estimation, the most significant trauma in Ms. Rider's life is the sexual abuse from her stepfather and that causes all other traumas to pale in significance. I mean, it's just insignificant in response to something that catastrophic. So, the answer is yes, there are lots and lots of things that could cause it. However, in this case, I think that one trauma is so significant that the others become somewhat incidental.

There was more than adequate evidence from which the jury could find appellant's conduct was the cause of appellee's emotional distress.

## II

### Severity

■ In *Harris v. Jones, supra,* the Court of Appeals said the fourth element of the tort—that the emotional distress must be severe—requires the plaintiff to show that she suffered a *severely* disabling emotional response to the

defendant's conduct. 281 Md. at 570, 380 A.2d at 617 (emphasis in original). The Court said, quoting *Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157 (1961)

"... not ... every emotional upset should constitute the basis of an action. Indiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts, and the law should aim to toughen the psyche of a citizen rather than pamper it. But a line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility." 174 N.E.2d at 164.

281 Md. at 571, 380 A.2d at 617.

The Court quoted comment j of § 46 of the *Restatement, supra:*

"Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed....

"The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge....

"It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed."

281 Md. at 570–71, 380 A.2d at 616–17.

Several cases after *Harris* focused on the second element of the tort and held that the conduct alleged was not "extreme and outrageous." *Vance v. Vance,* 286 Md. 490, 408 A.2d 728, *aff'g* in part and *rev'g* in part, 41 Md.App. 130, 396 A.2d 296 (1979); *Continental Casualty Co. v. Mirabile,* 52 Md.App. 387, 449 A.2d 1176, *cert. denied,* 294 Md. 652 (1982); *Dick v. Mercantile-Safe Dep. & Trust,* 63 Md.App. 270, 492 A.2d 674 (1985). This Court held in *Beye v. Bureau of National Affairs,* 59 Md.App. 642, 477 A.2d 1197, *cert. denied,* 301 Md. 639, 484 A.2d 274 (1984), that none of the four elements had been alleged. As to the fourth element—severity—we said it

has been held to require emotional distress "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it."

59 Md.App. at 657, 477 A.2d at 1205 (citation omitted).

We think the evidence in this case clearly established that appellee's distress is not a "neurotic overreaction to trivial hurts" which "are the price of a complex society." It is not "transient and trivial." Nor is it of such a nature that a "reasonable person in a civilized society should be expected to endure it."

In *Moniodis v. Cook, supra,* we found there was no evidence from which a jury could properly have concluded that three of the plaintiffs suffered the sort of emotional disablement described in *Harris.* We noted that, while each of them testified to being "upset," and suffered symptoms such as increased smoking, lost sleep, and "hives," none indicated that she was emotionally unable, even temporarily, to carry on to some degree with the daily routine of her

life. As to the prevailing plaintiff in that case, the evidence was:

> The reaction of Ms. Cook is another matter altogether. It appears that Cook took her duties at Rite-Aid quite seriously. When Moniodis told her she would be transferred, her hours diminished, and her store keys taken, she was deeply disturbed. Her husband found her at home crying and wringing her hands. There was evidence that she did suffer from a pre-existing nervous condition; her emotional state, however, deteriorated significantly after her termination. She took greater amounts of medication and began to sleep most of the time. She became a recluse, her husband testified, and did not "come out of it" for a year. Relatives came to the home to tend to household chores which Ms. Cook could no longer perform. She took pains to avoid contact with neighbors who might ask her why she no longer worked at Rite-Aid.

64 Md.App. at 16, 494 A.2d at 219–20.

Appellant argues that *Moniodis* requires that the plaintiff prove she is completely disabled before she can recover for intentional infliction of emotional distress. He argues that the plaintiff must show that the emotional distress is so severe that she is unable to participate in the normal activities of the daily routine of life. In particular, he argues that because the plaintiff was able to attend college and survive on her own, she necessarily could not be suffering from *severe* emotional distress.

While the evidence in *Moniodis* was such that the prevailing plaintiff was completely disabled for a period of time, we found that this evidence was "more than enough to permit a jury finding that Ms. Cook was severely distressed." 64 Md.App. at 16, 494 A.2d at 220. We therefore implied that something less than complete emotional disablement would be sufficient to satisfy the severe emotional distress element.

Appellant's argument finds some support from some language in *Leese v. Baltimore County,* 64 Md.App. 442, 497

A.2d 159, *cert. denied,* 305 Md. 106, 501 A.2d 845 (1985), where we noted:

> Leese's alleged injuries come nowhere near the type of severe emotional distress described [by Ms. Cook in *Moniodis* ]. His amended declaration alleges that he suffered "physical pain, emotional suffering and great mental anguish." This falls short of the "evidentiary particulars" that must be pleaded to show a *prima facie* case of severe injury. *Harris,* 281 Md. at 572 [380 A.2d 611]. Moreover, it is never alleged that he was unable to tend to necessary matters. Indeed, in several counts he alleges that he has been actively job hunting. Thus, we must conclude that he has not alleged a sufficiently disabling emotional distress to state a cause of action for intentional infliction of emotional distress.

64 Md.App. at 472, 497 A.2d at 174–75.

In *Hamilton v. Ford Motor Credit Co.,* 66 Md.App. 46, 502 A.2d 1057, *cert. denied,* 306 Md. 118, 507 A.2d 631 (1986), we found that bad taste and poor judgment in connection with the collection of a lawful debt did not amount to extreme and outrageous conduct. We also said:

> Verna also failed to demonstrate that her emotional distress was severe. She produced evidence that she was upset, that she had difficulty sleeping, and that she was embarrassed. To sustain an action for intentional infliction of emotional distress, however, one must suffer an emotional response so acute that no reasonable person could be expected to endure it. *Leese,* 64 Md.App. at 471, 497 A.2d 159; *Harris,* 281 Md. at 570–71, 380 A.2d 611. One must be unable to function, *Vance,* 41 Md.App. at 135, 396 A.2d 296; one must be unable to tend to necessary matters, *Leese,* 64 Md.App. at 472, 497 A.2d 159. Verna simply produced no evidence that she could not function or tend to her everyday affairs. The tale of her frustration and anguish was not one of pain so acute that no reasonable person could be expected to endure. The absence of such evidence by itself was fatal to her claim.

*Compare Moniodis v. Cook,* 64 Md.App. 1, 494 A.2d 212 (1985).

66 Md.App. at 60–61, 502 A.2d at 1064.

■ We think these cases are clearly distinguishable. None of the unsuccessful plaintiffs in *Moniodis, Leese* or *Hamilton* produced any medical evidence in support of his or her claim. While we do not suggest that medical evidence is an absolute prerequisite to recovery, it is an important factor in determining the severity of the distress. *See Ford v. Hutson,* 276 S.C. 157, 276 S.E.2d 776 (1981); *Young v. Stensrude,* 664 S.W.2d 263 (Mo.App.1984). We further note that in neither *Leese* nor *Hamilton* was the conduct found to be "extreme and outrageous." In *Moniodis,* even though we found the abusive discharge to be "extreme and outrageous," it was not nearly as outrageous as the conduct attributed to the appellant in this case. The very nature of the conduct involved can provide a guarantee that the claim for emotional distress is genuine and serious. 2 Harper, James & Gray, *The Law of Torts* § 9.1 (2d ed. 1986). When the acts of the defendant are so horrible, so atrocious and so barbaric that no civilized person could be expected to endure them without suffering mental distress, the jury may find as a matter of fact that "severe" emotional distress resulted. *Nat. Sec. Fire & Cas Co. v. Bowen,* 447 So.2d 133 (Ala.1983). In appropriate cases, "severe" emotional distress may be inferred from the extreme and outrageous nature of the defendant's conduct alone. *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148 (Me.1979), citing *Restatement, supra,* § 46, comment k. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. *Harris v. Jones,* 281 Md. at 571, 380 A.2d at 616.

As the Court of Appeals said in *Harris,* the four elements of the tort must coalesce, *i.e.,* unite, combine or blend into a single body. We do not consider them each separately and independently from the others. Appellant has conceded, as indeed he must, that the evidence was sufficient for the

jury to find his conduct intentional or reckless. He intended his specific conduct and knew or should have known that emotional distress would likely result. He concedes, as indeed he must, that the jury could find his conduct extreme and outrageous in that it offends against the generally accepted standards of decency and morality. The testimony of appellee and Dr. Spodak was sufficient to establish causation. From the very nature of the outrageous conduct—sexual molestation of a child by a person in a position of authority and trust during six of her more critical formative years; and from the intensity and duration of the emotional distress—a severe depression deteriorating over a three-year period and requiring an additional two years of therapy, the jury could properly find that the emotional distress was severe. Judge Fader did not err in denying appellant's motions for judgment.

JUDGMENT AFFIRMED, APPELLANT TO PAY COSTS.